Good afternoon. We're here to hear oral arguments in one appeal. Counsel, we're familiar with your cases, we've read your briefs, the authorities cited in your briefs, we've looked at at least portions of the record. You have more time than most oral advocates do, but still time will be limited, so please get to the heart of your argument. We're probably going to have some questions when the red light shines, it's time to finish. If you have questions from the court though that you're still answering, you're on our time. We're going to hear Esposito v. Warden. Is it Witter? Can you hear me? Good afternoon and may it please the court. This case presents the troubling prospect that Mr. Esposito's death sentence was unconstitutionally impacted by impermissible extraneous influences. In the summer of 2021, Mr. Esposito's legal team first learned that a seated juror had visited her pastor for religious advice about the death penalty after she had been questioned in voir dire and before the start of evidence. Do we need a certificate of appealability? Your Honor, both parties agree that you do not. I think it's been thoroughly briefed, but I'm happy to go through what's written in the briefs. Well, it's not entirely clear to me that we don't, so it might be helpful for you to explain why not. Certainly, Your Honor. So the law on the circuit at first glance does appear to be rather confusing, but it's detailed in the supplemental brief that we filed that confusion can be reconciled as follows. A COA is required to address the denial of a 60B motion, but a COA is not required to address a jurisdictional dismissal of a 60B motion. This construction is consistent with the court's en banc ruling in Gonzalez v. Secretary, which expressly held, and I quote, a certificate of appealability is required for the appeal of any denial of a Rule 60B motion for relief from a judgment in a 2254 or 2255 proceeding. Of course, the statute refers to final orders, and Jackson v. Crosby dealt with a 60B motion, right? It did, Your Honor, but it overlooked Hubbard v. Campbell. But did Hubbard address a 60B? Hubbard certainly was a dismissal, but did Hubbard address a 60B motion? No, Hubbard was a different type of... So if we're going to reconcile, wouldn't we reconcile by simply saying that Hubbard applies, at least in its own context, to there was a motion to amend, or at least for other dismissals, but that for 60B dismissals, Jackson applied Gonzalez's holding to a 60B dismissal? Is that another way to reconcile those cases? I don't think it's an accurate way to reconcile those cases. Why not? What's not accurate about what I just said? Because I think a dismissal is very different from a denial in that Jackson v. Crosby was, in fact, ignoring Hubbard improperly when it decided that Gonzalez applied. And this interpretation is more consistent with ADPA than... Of course, the problem is Jackson characterized the decision as a dismissal. I mean, aren't we required to give Jackson effect before we just say that it ignored an earlier panel president? And aren't we required to try to give both of our prior panel presidents effect if possible? But Your Honor, you can only do that by ignoring what Hubbard said, which is to address a jurisdictional dismissal. The only way... Why wouldn't you also be able to do what Judge Luck is suggesting? Because the prior panel means is limited to the holdings of the courts before it. I agree with that. And Gonzalez said expressly that it was dealing with a denial, not a dismissal. And everything about the case was focused on the word denial. We all know that denials and dismissals are very different. Well, didn't two of the appellants in Gonzalez actually have dismissals rather than denials for lack of jurisdiction? No, all three of them had denials. One of them was corrected in the panel decision where the court said it should have been dismissed and not denied, but all three of them technically had denials. That's my reflection of it. They were called denials, but they were for lack of jurisdiction, weren't they, for both Mobley and Lazo? One was denied without a comment. One was denied on the merits, and the panel said it shouldn't have been addressed because it was without jurisdiction. And I think Gonzalez was technically possibly dismissed because the court talks about jurisdiction, but it then says that it's denied, and I think also said denied on the merits. Jackson said, I'm quoting, on page 1293, the district court dismissed the motion for lack of jurisdiction. That's what Jackson said. Yes, I understand that Jackson said that. I'm just saying that Jackson probably, in my view, should have paid attention to Hubbard and applied Hubbard rather than Gonzalez. That's my only point. But even if I am wrong about that, subsequent Supreme Court decisions clearly show that Hubbard was correctly decided on the issue of jurisdictional dismissals, and that's a fourth circuit had a rule that adopted the Gonzalez majority rule, and they have subsequently overruled that on the basis of Halverson v. Bell, the case that came out of the Sixth Circuit, and that says... Halverson is very different than this circumstance. I mean, Halverson has nothing to do with the 60B. It's about whether habeas counsel was allowed to... Federal habeas counsel was allowed to challenge a state challenge. And there, yes, the Court said in that circumstance a COA was unnecessary, but I just... I'm heartened and trouble seeing under how our version of the prior panel precedent rule, we would see that that very different circumstance would abrogate a holding in Jackson, again, assuming... I know we're all assuming right now that Jackson's the controlling decision. But, Your Honor, a jurisdictional dismissal of a 60B motion is so far afield from a ruling on the merits of a habeas petition that Halverson should be applied. That's what the Fourth Circuit concluded in United States v. McRae, and that's the appropriate response. Even if... Even if Jackson was correctly decided, it was a pre-Halverson case, Halverson makes clear that the dismissal on jurisdictional grounds of a 60B motion is so far attenuated from an actual order on a petition for habeas relief that it shouldn't be... It should be deemed a collateral order in the way that Halverson described them. If a COA is required, should we grant one here? Oh, definitely. Why is that? Well, first off, there are several issues of first impression, and so that's a reason on its own. There's clearly debatable... I think that I've written coherent and persuasive arguments, and so there must be reasonable jurists who could agree with me on what I've argued. What do we do with the plain language of 2244B1, which bans claims that were presented in a prior application without reference to how they were previously adjudicated? There was a juror misconduct bear allegation in the earlier petition that strikes me as presenting the same claim without factual elaboration, but it's a juror misconduct claim, and if the statute says that if it's presented in a prior application, then it shall be dismissed. The Supreme Court in Gonzales v. Cosby clearly stated that issues have to have been addressed on the merits, whether granted or denied, in order for that to be triggered. Under Gonzales, if a motion attacks a prior merits adjudication or raises a new claim, it is in actuality a second or successive petition, but if it doesn't do that... That part of Gonzales, though, it certainly uses the term on the merits. I appreciate that you've done a sort of find and search for all the times it mentions it, but in that part discussing the portion of the statute that Chief Judge Pryor just asked you about, what Gonzales says is, quote, under section 2244B, the first step of analysis is to determine whether a claim presented in a second or successive habeas application was also presented in a prior application, period. If so, the claim must be dismissed. All the claims in Gonzales have been presented in the first application that was dismissed because it was out of time, and subsequent case law made that ruling suspect. But all of those issues had already been presented, and they had been... Right, but the issue in Gonzales was that the attack was not, the 60B attack was on the erroneous dismissal for the limitations period, not the claim itself. And so, I think we can all agree juror misconduct is a claim. And so, if it is a claim defined as an asserted federal basis for relief from a state court's judgment of conviction, that's quoting directly from Gonzales. And if the first step of the analysis is to determine whether that claim was presented in a second document that also was presented in a prior application, it seems to be that they were. But, Your Honor, we're trying to get the judgment open so that we can present a claim that was not adequately fleshed out because we lacked evidence. If we lacked evidence, it was a defect in the proceeding. A defect means something that's insufficient, not something that's wrong. It was a defect in the proceeding because the juror, when she was interviewed in 2007, did not disclose her conduct in going to visit her pastor after being questioned. How could that be a defect in the proceeding if it preceded the proceeding by about like a decade? Well, it had a cascading effect into the federal system where the judge ultimately ruled the claim was abandoned and not addressed the merits because... Well, it ruled it was abandoned because the judge said, you have to brief all your claims and your client didn't brief that claim purposely. Well, we didn't brief the claim because we didn't have sufficient evidence at the time to brief it. But the evidence exists. And, you know, the evidence is pretty significant. It would be a grave injustice to permit Mr. Esposito to be executed without federal consideration of the merits of this claim. The type of error in this case is presumptively prejudicial and it was prejudicial in this case. Here, the information the juror received did not come from the witness stand in a public courtroom with full judicial protection of Mr. Esposito's rights of confrontation. How is it a defect in the proceeding for him to just lack evidence? I don't see that that's something about the proceeding itself. That's a failure on the part of the habeas petitioner. And if that's the case, it would seem to vitiate any of the gatekeeping requirements. You could always come back with new evidence to support your claim and say, oh, I just didn't have this before. Defect in the proceedings. But, Your Honor, that's not true. Because first, it would have to be a claim that had been raised but never addressed on the merits. Okay, we have that. It would have to be, well, that's the main thing. It would have to have been raised and it also had to have not been addressed for the new evidence to even be something that one could consider considering in this. Like, we filed a 60B motion because it's allowed under the clear language of Gonzalez versus Crosby. And, Your Honor, if we need a COA in this case, then I would ask the court for permission to brief the issue. It wasn't something that we were told to brief. We were told that we didn't need to brief it. And in our supplemental brief, we've asked for the opportunity to do so. Well, we're beyond that. So, if we granted the COA, or if we're deciding whether to grant the COA, we have to decide both that your underlying juror misconduct claim is debatable among jurists of reason and that the procedural problem here is debatable, right? Yes, I understand that. I understand. And I think what we're getting at is, is this even really debate, is the procedural question really even debatable? It looks like it was a juror misconduct claim was presented earlier. It was dismissed, which ordinarily bars from being represented. And your argument for why this is a proper 60B, why there's a defect in the proceeding, is you have some new evidence? Well, Your Honor, if we hadn't looked for this evidence, I think that would be true. But we diligently sought evidence of misconduct by the jury. It was flagged as an issue by the Georgia Supreme Court in the direct appeal opinion based on a rather shocking to me extrajudicial visit to the crime scene that was where the jurors were accompanied by nobody other than bailiffs, some of whom actually were witnesses in the case. The lawyers didn't go. The judge didn't go. A court reporter didn't grow. And then it wasn't raised on appeal, but the Georgia Supreme Court was sufficiently concerned about it that they flagged that as a problem and said this should not ever be repeated in the future. And on the basis of that, post-conviction counsel in State habeas went and talked to all the jurors looking for evidence that would support a claim of juror misconduct. And Ms. Harris at the time, I think she was Ms. Harris at the time in 2007, did not disclose this visit to her pastor. Now, if that had happened, there's evidence in the record to show that the investigator who conducted that interview would have told the lawyers, and the lawyers said if that had been the case, they would have fought to have that issue addressed in State habeas proceedings, and it would have followed the case into federal court. Because the juror did not disclose that, and that information was only in her head, like there was no way to know that she visited her pastor without her disclosing it. That's a defect, and Mr. Esposito is entitled to get federal review of that pursuant to a 6dB motion. I'd like to refer the court to a case called Ybarra v. Filson. It wasn't cited in our briefs on appeal, but it is cited below, and it's mentioned in the district court's order denying the 6dB motion. The site is 869 F3rd 1016. In that case, it's a pretty old case. The first two petitions that were filed in the case were mixed petitions pre-ETPA, and the judge dismissed the petitions because they were mixed with instructions to go and exhaust the claims. And on the second time he did that, he said, don't come back with a mixed petition. Post-ETPA, the petitioner did come back with a mixed petition, and the judge said, you need to abandon your claims that are not exhausted. And so they did. They proceeded with the case. He lost in his habeas proceedings, and years later, he exhausted an Atkins claim that had been raised in the third petition, and he returned to court. I'm sorry to interrupt. You know, a few times you've now referenced the failure to get any sort of relief on this or any sort of review on this, but it seems to me that EDPA does allow some sort of review. It's just you don't want to do it, and that is to come to us and ask for an application to allow you as a gatekeeping to then go through and present the claim appropriately. It just seems to be that no one's prohibiting you from, no one's prohibiting your client from presenting the claim, and no one's prohibiting us from granting that relief other than your client not seeking that relief from us, which EDPA seems to do. You want to use this special tool that's really narrow and really limited and not the avenue that EDPA seems to want you to go through. I'm just confused about that. Well, EDPA recognizes that second or successive petitions can be filed under certain narrow circumstances, but... Including newly discovered evidence, right? And this, the rules of habeas procedure also recognize that the rules of civil procedure apply when they're not inconsistent. Gonzalez versus Crosby held that 60P had a role to play in habeas petitions, and Mr. Esposito's 60P motion fits within the contours of what Esposito, not Esposito, but Gonzalez held. We properly filed a motion. It's not trying to get anything. It's not sandbagging. Mr. Esposito tried to get this information in a timely fashion when he was in state habeas proceedings, and due to the juror's failure to disclose it, he wasn't able to get it until 2021. This is an unusual case. It's not going to open the floodgates to meritless litigation, and indeed, Gonzalez recognized that 60B's... I'm not sure that's right. It seems to me that the way to do it then is, because what you essentially told us is if we didn't bring this up at all, we'd be in a different posture, but by bringing it up, in other words, throwing everything in our petition, 60,000 claims, but only raising and briefing like five of them, because that's the only ones we have evidence on, that sort of allows us this avenue to keep investigating and keep doing things if something comes up to be able to then come back and do it. I mean, that seems to be contrary to what the whole purpose is, is to filter things through one avenue of federal review, right? Well, the reason people put claims in that they don't necessarily have discovered the evidence to support is because EPA limits what you can do in the future. It's in the nature of EPA to make people... But Rule 11 also applies. You mentioned the Rules of Civil Procedure that apply. There has to be a good faith basis to do something. You can't just throw in every single claim that's out there with the hope that some evidence pops up down the line. And there was a good faith basis. We vigorously sought to get an evidentiary hearing on whether the district court's refusal, not the district court, the trial court's exclusion of affidavits regarding the juror primetime visit, and if that had been adjudicated, we would not be here today because we would no longer fit within the confines of Gonzalez versus Crosby that allows us to come in with the 60B motion. I had a point that has evaporated. I apologize. Can I ask you this? Mr. Esposito had a second habeas proceeding in state court based on this claim, didn't he? It's not in the record here, but in that proceeding, Ms. Harris gave live testimony where she contradicted some of her 2021 affidavit. Does that testimony doom the claim? Should you ever get that part here? No, I don't believe it does, Your Honor. So the juror gave a statement in 2007 that has nothing to do with the issue before the court. Then when she was visited on July 9th, I believe, sometime in the middle of July in 2021, she gave a handwritten statement. She lived in Florida, so our investigator who was a notary in Georgia couldn't notarize the statement. So it was just an unsworn statement that she signed where she talked about this visit to her pastor and how it changed her views prior to her serving in the case. Then after we filed this, we did some additional investigation and filed a 60B motion. And thereafter, we also filed a petition in state court to raise that claim. We also obtained in April of 2022, I believe, an affidavit from her that expanded upon what she said in her written that was not notarized. And then she gave testimony. So she had two prior statements, one notarized and one endorsed in the notarized statement in which she talked about the sequence of events. But when she testified in court, she said she could not remember the sequence of events. The trial court adopted verbatim the order that the prosecutors had written and the Supreme Court did not grant review. So it is true that this court or federal courts have to defer to the fact-finding, but they don't have to rubber stamp the fact-finding. And I think that we have a very coherent argument that the fact-finding in this case with respect to what when the juror went to visit the pastor is incorrect in the state court record. And I'd be happy, by the way, I gave the court access. I mean, I didn't give you access, but I gave your honors the citation to get the record. But I would also be happy to supplement the record here with the record that we have from the state court, if you would like that. Anyway, to get back to your point, Judge Locke, there, although I see I also want to be able to reserve some time for rebuttal. So you've saved five minutes. That's all right. That's the wrong. Don't worry about it. Yeah, yeah. Thank you. Keep going. If Mr. Esposito had not raised the claim of juror misconduct, which had a solid basis based on the jury's visit to the crime scene, it wasn't a frivolous claim. It wasn't done for no reason. If he hadn't raised that, he could not be raising this issue here, because that would be a claim that wasn't raised in the first petition, and he would not be able to raise it through 2244. If the district court had denied the claim on the merits, which it probably could have done but did not, then we also couldn't be here, because then we would be trying to attack an adjudicated claim. But the claim was not adjudicated. It was deemed abandoned, which means that the merits were not addressed. And under Gonzales, we are entitled to seek review of the case now. It's not like we are, we didn't sandbag this issue. We did everything that we were supposed to do. We investigated the jurors. We attempted to get this information through no fault of our own. We didn't get the information until 2021. And given the district court's ruling in the case, which deemed the issue abandoned because it wasn't briefed, and the judge said, I'm not required to brief your issues. His ruling had nothing to do with the merits at all. Because he didn't address the merits, it was properly in front of the district court, and the case should be remanded for that court to consider the issues. It's a very disturbing claim, Your Honors, because biblical law is often very contrary to civil law, and especially in this area. The juror, as the state court record shows, was directed to portions of the Bible that make civil authorities ordained by God and have other problematic language. And this court and others have recognized that religious mandated procedures for imposing a death sentence. These require jurors to give meaningful consideration to mitigating evidence as well as aggravating evidence. This court reversed based on prosecutorial arguments invoking the Bible in Romine v. Head. The district court in Jones v. Kemp, which is cited in our briefs, dismissed granted habeas relief based on the judges allowing the jurors to take a Bible with them into the deliberation rooms based on how damaging religious arguments can be to the process that's supposed to be imposed under the Eighth Amendment. It's particularly problematic when a juror secretly obtains extraneous information about how her religion views the death penalty from a trusted spiritual advisor and the Bible, since there's no possibility of judicial oversight or intervention. So it's a very serious claim, and we're simply asking for the opportunity to have the federal court hear it. I think Gonzalez permits that. We've briefed that pretty extensively. And if the court has no other questions, I'll reserve my last 26 seconds for rebuttal. Well, you know, you've got five minutes still that you've saved for rebuttal. Okay. Okay. But if I'm running over, I'd really like my extra 15. Thank you. We'll give you your extra 15. Mr. Thompson. Thank you, Mr. Chief Judge. May it please the court. A Rule 60B motion constitutes a successive habeas petition if it raises or re-raises a federal claim for relief from a state court judgment. That is exactly what John Esposito's motion does. Nearly every line of his motion is devoted to the merits of that claim, and the sole justification he offers for reopening his habeas proceeding is that he says he's now able to substantiate that claim. Can you start with the COA issue? Of course. Sure. So we read this kind of succession of the court's decisions. The way we interpreted it was that Hubbard was just too close to the procedure that unfolded here. Is it Jackson closer than Hubbard? Well, so again, I want to be clear at the outset. We're not going to push back too hard on the idea that you need a COA here, and we don't think— I just want your honest assessment. Isn't Jackson closer than Hubbard? Jackson involves a 60B motion, and Hubbard involves something with different words at the top of the page. It's sought to amend. I mean, he sought to amend the petition. That's a Rule 15, if anything, right? Well— He didn't seek to—in other words, he didn't seek to undermine what happened before. What he said was, I want to amend my claim to add a dementia claim and this other claim, one based on age, that I had not done before. So I think that's right. The way we read it is that, basically, whenever you've got a filing in front of the court that the court determines, in substance, is a second or successive habeas petition, 2244B operates to kind of immediately strip that court of subject matter jurisdiction to proceed any further. And this court said in Williams that if you don't have jurisdiction over the motion, you don't have jurisdiction to grant the COA. So we kind of read those substantive ideas underlying Hubbard as the aspects of this court's jurisprudence that were most relevant here, but— If we read Hubbard that broadly, would that mean that Jackson was wrongly decided, and we would have to ignore it? I think there may be a way to reconcile them based on the arguments that were presented— If there may be— Presented to the court in Jackson. If there may be, then wouldn't our prior panel precedent rule require us to do that, to reconcile them, to give effect to both? I think, right, so it kind of depends on which way you reconcile it, though. I do think it would require the court to attempt to reconcile them. Tell me the room that Jackson has. That's what I'm confused about. What room does Jackson have with your capacious reading of Hubbard? Sure. I think it's kind of room by omission more than room by commission, right? It's because it is not addressing these kind of underlying jurisdictional principles for why you couldn't proceed to the COA inquiry. It's just not clear that the court addressed that. But again, I'm not— But the holding is clear. I mean, it applies the rule of Gonzalez to a dismissal of a Rule 60B for lack of jurisdiction. That's the holding of the case. You're right that it is not a long analysis. It just seems to me, if we read Hubbard broadly, like you suggest, there isn't room for Jackson. And the way that Chief Judge Pryor describes our prior panel precedent rule is exactly right. If we can read them all to give effect to all of them, we must. And it seems to me there is a way to do that. One is, Gonzalez applies to denials. Jackson applies to dismissals. And Hubbard either applies to everything that's not Rule 60, or at very least, in its most narrow view, to amendments, to Rule 15 amendments. I think that analysis makes sense. I'll try to explain. So when we were reading Hubbard, it was that last step in your analysis, Your Honor, where we weren't sure how to fill in that blank. And so the way we read Hubbard was that because this area is all about the label on the top of the filing isn't really what matters, that that's the way we went. That's the way we read the cases. But again, if this court rules that a COA is required, we're completely comfortable with that. And on this record, we don't believe that a COA should be granted for the reasons on the procedure. We haven't briefed the kind of underlying merits of the constitutional claim of that issue. Obviously, we would have arguments we would want to present on that, on the merits, on prejudice, on other issues. But because this case, as it comes up to the court, is all about the procedural side of things. How is it not at least debatable on what this is? I mean, I will say we don't seem to have, and there doesn't seem to be anything out there on this very unique factual or procedural situation where a claim was actually raised but not decided on the merits, although the rest of the petition is decided on the merits. And using Gonzales, and there is language in there to suggest that the focus is on merits determinations and the attack on them collaterally through a 6PB or not. And so why is that not at least a debatable procedural issue that would get through the COA gateway? So the reason I don't think it's debatable is that Esposito's argument, and the way Your Honor just framed it for sake of argument, is all about what the district court has decided and what has happened in the past. And Gonzales tells us that you can potentially bring a 6PB if neither the motion nor the judgment was about the merits. He's focusing only on the judgment. You also have to look to the motion. You have to ask, what is this motion seeking to accomplish? And also, is the motion's justification for reopening the proceeding? Gonzales tells us what those are. Those are defects in the federal habeas proceeding. Those could be erroneous upstream procedural rulings that prevent litigation on the merits. What they are not as a justification is, I think I can prove my habeas claim now. If that is a justification for a 6PB that avoids 2244, the exception has completely swallowed the rule for the reasons the Chief Judge was mentioning earlier. I mean, you know, this idea that the inability to discover evidence at the time of the first habeas proceeding is a defect in the proceeding, that's simply civil litigation, right? There are all kinds of times when a plaintiff would like to assert a claim in his complaint. Does the lying witness change that? Does that change the analysis? Because that's essentially what they're alleging here is, we asked her, I mean, I know there's some factual dispute about this, but take what they say as given for the moment. What they say is, our investigator, and I know what the record says, she says, I don't exactly remember, but I would have asked this, but again, assume it. I asked her flat out about this. She did not disclose this, and only by a dint of this being close to possibly a warrant situation did we go back, and now it's disclosed, and now we know about it. Does that change? That's not just a no evidence case. That's a affirmatively lied to us case. So it is, granting the factual premise, I think what that is, is a situation where the litigant's failure to discover evidence supporting his claim is outside of his control. If there was fraud on the court, it could be different. If the respondent in a habeas case put in erroneous information to the record or concealed something from the other side, if counsel did that, if Footnote 5, I believe in Gonzalez, references a case where you had a witness, the habeas petitioner wanted to call his trial counsel for an ineffective assistance claim, and trial counsel said, I can't do that, and he gave a reason, and that reason was a lie to the court. Once you've injected the lie kind of into the proceedings, you're disrupting the ability of the proceedings to kind of work reliably and identify the truth. Isn't that what they say kind of happened here? In other words, they relied on that in representing to the court, hey, we have no evidence to support this claim because this juror told us this, and that now is not true. In other words, aren't they saying that that lie was sort of put before the court when the court sort of asked it, is there any evidence to support this, and they said, no, we don't, and then the court said, okay, it's abandoned? I don't think, again, assuming for argument that there was any lie, I don't think the mere presence of a lie transforms the inability to access evidence into a defect in the proceedings. I mean, memories fade, witnesses die, documents are lost. That is the reality of civil litigation. That is not a defect in the proceeding. This court, the Supreme Court in Gonzalez, the Fifth Circuit have all said at various points, the failure to find evidence because of a counsel's inability or unintentional to acquire something is not going to cross that line. And that's, you mentioned Gonzalez 505. That's what Gonzalez 505 says, flat out, that ineffective assistance, counsel's omission in doing something is not a basis in which to bring a Rule 60 motion. But again, I just, is there a difference between counsel never interviewing the juror, which I think would fall within that, versus counsel actually doing it and the juror not disclosing something when asked about it that is later disclosed? Maybe one way to think about it is kind of holding the proceeding constant. Was there any barrier to the petitioner's ability to discover this information out in the world? If that barrier does not arise from the proceedings in any way, then I don't think that the kind of subjective intent of the person who writes a slip and fall and the grocery store door is locked and you can't get in in time. I mean, we're not going to delve into the mens rea of those individuals to try to figure out if it's fraud on the court. It's just that you couldn't obtain the information to support your claim. And 2244— Is there any daylight between this discussion we're having in terms of what's debatable for COA purposes and whether I ultimately agree with you when we get past the COA and get to the merits of the procedural issue? We don't think it's debatable based on the language of Gonzalez and DeFranchi and other opinions, but to the extent the court thinks it's debatable, I think our authorities resolve the debate once the court gets past the COA hurdle, if it decides it needs to. I think, you know, very briefly, it may help to think through, right, some of the examples of where a Rule 60b motion, you know, would be authorized in the circumstance, right? Rule 60b1 covers unfair surprise. If the respondent in a habeas action doesn't tell the petitioner who its witnesses are going to be before it calls them at the last minute, okay, maybe that's a defect in the proceedings that needs to be reopened with a Rule 60b. 60b3—fraud, misrepresentation, misconduct—we've talked a little bit about that. A respondent entering fraudulent evidence into the record. Rule 60b and AEDPA can coexist, but what they cannot do, what this court said in DeFranchi, is if the object of the Rule 60b motion, if it's clear, if what it is raising is a claim for relief from a state court conviction, then it triggers 2244B. I don't think you can read the 60b motion in this case any other way. It starts with the first line and ends with the conclusion. The conclusion says, Mr. Esposito has raised a colorable claim of juror misconduct. This court should grant the motion, reopen the case, and grant the writ on the merits. So from start to finish, the 60b motion does exactly what Gonzalez and this court have recognized AEDPA does not permit without pre-clearance. And so for those reasons, we'd ask the court to refer. There are no other questions? Thank you. Thank you, Mr. Thompson. So you're the new Solicitor General, right? Well, I apologize for not referring to you as General. Welcome. Welcome. Ms. Switter? Thank you, Your Honor. Just to quickly address the COA issue, I want to reiterate that the focus in Gonzalez was on denials. The en banc majority decision relied on circuit court decisions addressing the denial and not the dismissal of Rule 60b motions. In fact, the one that was most persuasive and that the court discussed, Kellogg, was a denial of a motion on the merits. Under the prior panel rule, this court is bound only by the holdings, and that's Hubbard v. Campbell is really the binding decision. Like at some point, when there's confusion, it's because somebody has strayed from the prior panel rule and the court has to figure out where the defect happened. Yeah, Ms. Switter, here's the problem with that. We have a pretty extensive case law about how to reconcile precedents that appear to be inconsistent but, in fact, can be reconcilable, and therefore, we can give effect to the holdings of both. And it has to be a very square conflict for us to say that an earlier precedent was binding in the sense that a later precedent was flatly inconsistent and, therefore, we can ignore that more recent precedent. Where possible, our case law says, just saying what our case law says, where possible, we have to give effect to both. And it seems to me, it's pretty easy to say Hubbard wasn't a 60B situation. Jackson was. What am I missing? I mean, I've set forth my argument pretty clearly, pretty fulsomely, I think, in my supplemental brief, and I'll rest on that. Moving on to the prosecutors, the state's argument, the motion focuses on the facts because the facts are relevant to a 60B motion. They're relevant when it's under 60B2, and they're also relevant when it's under 60B6. That doesn't mean that the 60B motion was not seeking simply to have the case reopened so that the issue could be adjudicated. Like, there's no evidence in the federal record yet. That evidence was yet to be created when we filed our brief. It's now been created. It is in the state court system, and there would have to be a process that follows reopening the judgment under 60B that does not result automatically in relief for Mr. Esposito. As Judge Luck noted, this is a very unique situation. I've spent lots of time poring over cases, trying to find things that were similar, and they're just hard to find because it's a unique case. I think Buck v. David makes clear that the defect doesn't have to be an error, and it also makes clear, if you look at the 60B motion that was filed in that case, that the merits are relevant. That was the focus of the 60B motion that was filed, even though it was on a technical issue of whether or not the case could be reopened under 60B based on intervening case law. And, Your Honors, we're seeking nothing other than that the rules are applied equally to both sides. EPA is a very difficult and confusing statute, as I'm sure Your Honors know, with numerous procedural traps for the unwary litigant, and even seasoned habeas lawyers make missteps that may eviscerate their client's right to seek relief, and normally it's the petitioner that bears the brunt of that. But the rules apply to the state and the courts as well, and here the district court did not address the merits of the claim, and under Gonzalez v. Crosby, Mr. Esposito is authorized to seek 60B relief. And, as I said, Mr. Esposito did everything he was required to do. He diligently sought this information. He acted on it swiftly once he did find it. We did take a little bit of time during the pandemic to do further investigation so that when we came to federal court, we'd have a stronger claim, but we acted as swiftly as we could, and it's a clear constitutional violation. The allegations are disturbing, and they deserve merits review by a federal court. So, in conclusion, Mr. Esposito filed a true 60B motion seeking to open the judgment due to its discovery that a juror's capital sentencing decision was impacted by extraneous influences. The district court was wrong to conclude that it lacked jurisdiction to address this serious constitutional violation, and this court should remand for further proceedings. In the event, the court concludes that whether we have a COA is a problem, we'd also ask for the opportunity to brief that since we did not get an opportunity to do so before. If the court has no questions, then I will. I hear none. Ms. Fetter, I note you were appointed. Thank you for accepting the appointment and assisting us today. We're adjourned. Thank you, Your Honor. Thank you.